UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS - TRANSPORTATION DIVISION, : : : : : : | CASE NO. 1:21-cv-01240<br><br>OPINION & ORDER<br>[Resolving Doc. 18, 19] |
| Plaintiff, : : | |
| v. : : | |
| CSX TRANSPORTATION, INC., | |
| Defendant. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this Railway Labor Act case, union Plaintiff International Association of Sheet Metal, Air, Rail and Transportation Workers - Transportation Division ("SMART-TD") sues employer Defendant CSX Transportation. The parties dispute the procedures for filling temporarily vacant job assignments.

This Court first decides if the parties have a major or minor dispute. Because of Congress's concern that labor disputes not stop interstate rail traffic, the Railway Labor Act establishes different resolution processes for major disputes and minor disputes.[1] For major disputes, this Court has jurisdiction to issue injunctions to keep the status quo while requiring mandatory dispute resolution procedures. In contrast, for minor disputes, the parties must submit the dispute to mediation and arbitration and this Court does not have subject-matter jurisdiction.

---

[1] *Wheeling & Lake Erie Ry. Co. v. Bhd. of Locomotive Engineers and Trainmen*, 789 F.3d 681, 690 (6th Cir. 2015).

Case No. 1:21-cv-01240
GWIN, J.

Here, the parties disagree over a vacancy-filling policy Defendant CSX announced in June 2021. The policy affects employees in displaced status. Employees enter displaced status when a higher-seniority employee bumps them from their job position.

Under the June 2021 policy, Defendant CSX can call displaced employees to take temporarily vacant job assignments, even if the temporary assignment is in a position different from the position the displaced worker's usual position.

Under the June 2021 policy, Defendant CSX can also discipline displaced employees who do not accept that temporary assignment. Defendant CSX uses displaced employees for vacancies only after exhausting all other available options under the collective bargaining agreement.

For the reasons stated below, the Court finds that the parties disagree over a minor dispute. Because the dispute is minor, the Court does not have jurisdiction to issue injunctive relief under the Railway Labor Act. The Court **DISMISSES** the case for lack of subject-matter jurisdiction.

I.  Background

   a. Collective Bargaining Agreement

Defendant CSX Transportation acts as a "carrier" under the Railway Labor Act.[2] Plaintiff union SMART-TD, represents Defendant's train service employees and is a "representative" under the Act.[3]

Plaintiff SMART-TD and Defendant CSX work under a collective bargaining agreement.[4] Defendant negotiated the agreement with Plaintiff's predecessor, the United

---

[2] 45 U.S.C. § 151 First.
[3] 45 U.S.C. § 151 Sixth.
[4] Doc. 15-1 (Collective Bargaining Agreement).

- 2 -

Case No. 1:21-cv-01240
GWIN, J.

Transportation Union.[5]

The current dispute concerns the system for assigning employees to vacant positions. Employees bid on positions through a seniority-based system.[6] When no employee bids on a position, or when an employee takes leave from a regular assignment, Defendant CSX must fill the vacancy.[7]

The collective bargaining agreement sets the rules for filling vacancies. To fill a temporary vacancy, Defendant CSX first turns to extra boards, or lists of lower-seniority employees available for call outside the seniority-based bidding process.[8] If no extra board employee can fill the position, the Defendant CSX fills the vacant position according the "vacancy fill logic" set out in the collective bargaining agreement.[9] The vacancy fill logic gives a sequence CSX should follow in selecting an employee to fill a vacant position.

The collective bargaining agreement does not say what the employer should do to fill a vacant position after exhausting the vacancy fill logic.

Now, the parties disagree over a vacancy-filling policy Defendant CSX announced in June 2021. Defendant CSX says that the collective bargaining agreement authorizes the policy. Plaintiff SMART-TD says that Defendant CSX created a new June 2021 vacancy-filling policy without required negotiations.

### b. June 2021 Policy

The parties dispute a policy Defendant CSX announced in June 2021.[10] The policy allows Defendant CSX to temporarily assign certain employees to vacant positions while

---

[5] *Id.* at 1.
[6] Doc. 18-1 at 4; Doc. 19-1 at 9.
[7] Doc. 18-1 at 4; Doc. 19-1 at 10.
[8] Doc. 18-1 at 5 n.1; Doc. 19-1 at 9.
[9] Doc. 15-1 (Collective Bargaining Agreement) at 35-36, 81-82.
[10] Doc. 15-3 (June 2021 Policy).

Case No. 1:21-cv-01240
GWIN, J.

those employees do not have a regular assignment.

The June 2021 Policy applies to employees in displaced status. When a higher-seniority employee bids on a lower-seniority employee's position, the higher-seniority employee bumps the lower-seniority employee out of that position.[11] That lower-seniority employee enters displaced status. The collective bargaining agreement specifies rights and obligations for displaced status employees.[12]

Under the June 2021 Policy, Defendant CSX can call a displaced employee to fill in a vacant position.[13] Before calling a displaced employee, Defendant CSX must first follow the other steps outlined in the collective bargaining agreement: (1) call available lower-seniority employees on extra board lists; and (2) follow the agreed-upon vacancy fill logic sequence.

In effect, the June 2021 Policy requires displaced employees to temporarily fill in vacancies while the displaced employees are between regular assignments. After a higher-seniority employee bumps a lower-seniority employee from an assignment, Defendant CSX can call that displaced employee as a temporary fill-in at any time until the employee bids on and receives a new regular assignment. But CSX can only call a displaced employee only after CSX has first tried to fill the position using the vacancy fill logic.[14]

Under the June 2021 policy, if a displaced employee does not answer the call to fill a vacancy, Defendant CSX can discipline the employee through the attendance point system.[15]

---

[11] Doc. 15-1 (Collective Bargaining Agreement) at 73; Doc. 15-29 (Prior Arbitration Decision) at 2-4.
[12] Doc. 15-1 (Collective Bargaining Agreement) at 73-78.
[13] Doc. 15-3 (June 2021 Policy).
[14] *Id.*
[15] *Id.*; *see also* Doc. 15-2 (Attendance Point System).

- 4 -

Case No. 1:21-cv-01240
GWIN, J.

The June 2021 Policy says that the collective bargaining agreement gives Defendant CSX authority to call displaced employees as temporary fill-ins after the employer exhausts other steps.[16]

To show that authority, the June 2021 Policy quotes Rule 64, Paragraph 10 of the collective bargaining agreement: "A trainman who has displacement rights but has not placed himself will not be used to fill a vacancy except in an emergency or when no other employee is available."[17]

After quoting that collective bargaining agreement language, the June 2021 Policy then says:

> Accordingly, trainmen and conductors in displaced status, from time notified of his or her displacement until marked up to a regular assignment, will be subject to call and be expected to answer a call for service to fill a vacancy during cases of emergency or when no other employee is available. Such employees will be called only after all steps of the vacancy fill call logic have been exhausted and in reverse seniority order.[18]

In sum, the June 2021 Policy allows Defendant CSX to call displaced employees to fill vacant positions. If a displaced employee does not answer CSX's call to fill in, CSX can discipline the employee.

### c. Dispute Over the June 2021 Policy

After Defendant CSX issued the June 2021 Policy, the union objected.[19] With its objection, the union argued that the policy imposed a collective bargaining agreement

---

[16] Doc. 15-3 (June 2021 Policy).
[17] Doc. 15-1 (Collective Bargaining Agreement) at 75.
[18] Doc. 15-3 (June 2021 Policy).
[19] Doc. 15-4 (SMART-TD June 4, 2021 Letter).

- 5 -

Case No. 1:21-cv-01240
GWIN, J.

unilateral change and argued that Defendant CSX could not use the June 2021 Policy until the parties completed major dispute resolution procedures.[20]

Defendant CSX responded that collective bargaining agreement Rule 64 ("the Displacement Rights Rule") allowed the June 2021 vacancy filling policy.[21]

Several weeks after Defendant CSX issued the June 2021 Policy, Plaintiff SMART-TD filed this federal court lawsuit.[22] With this lawsuit, Plaintiff seeks: (1) a declaratory judgment that the June 2021 Policy violated the collective bargaining agreement; (2) an injunction stopping Defendant and its officers, employees, and agents from using the June 2021 Policy; and (3) costs and attorney's fees.[23]

The parties submitted cross-motions for summary judgment, along with cross-responses.[24] The parties also submitted a joint stipulated record.[25]

### d. Relevant Past Practice

As part of its review to consider whether the parties have a major or minor dispute, this Court also considers past practice.

The parties have negotiated over the vacancy fill logic. The record shows periodic communications about vacancy-filling procedures from 2002 through 2021. Plaintiff SMART-TD and its predecessor negotiated with Defendant over vacancy-filling steps, including which employees were required to accept a position if the employer contacted them.[26] In these earlier negotiations, the parties negotiated over the interpretation of

---

[20] *Id.*
[21] Doc. 15-5 (CSX June 5, 2021 Letter).
[22] Doc. 1.
[23] *Id.* at 6-7.
[24] Doc. 18; Doc. 19; Doc. 20; Doc. 21.
[25] Doc. 15; Doc. 17.
[26] Doc. 15-6 (UTU Nov. 11, 2003 Letter); Doc. 15-7 (CSX June 9, 2003 Letter); Doc. 15-8 (CSX May 6, 2003 Letter); Doc. 15-9 (CSX July 17, 2003 Letter); Doc. 15-10 (CSX Aug. 12, 2002 Letter); Doc. 15-11 (CSX June 11, 2003 Letter); Doc. 15-12 (Decision Display Table); Doc. 15-13 (CSX Aug. 25, 2003 Letter); Doc. 15-14 (CSX Aug. 25, 2003 Letter); Doc.

Case No. 1:21-cv-01240
GWIN, J.

collective bargaining agreement vacancy fill logic language.[27]

The parties have also negotiated over how Defendant may use extra boards to fill vacancies.[28]

In addition to the negotiating history, the arbitration history gives past practices relevant to this dispute.

The parties had a previous dispute over displaced employee discipline. In that earlier dispute, Plaintiff Union SMART-TD challenged Defendant CSX's decision to discipline a displaced employee who waited 45 hours while displaced before taking another assignment.[29] The parties submitted the dispute to National Railroad Adjustment Board arbitration.[30]

The National Railroad Adjustment Board resolved the prior dispute over displaced employees in favor of Defendant CSX.[31] The Board found that CSX presented substantial evidence that CSX can discipline displaced employees who do not answer calls to work.[32]

After Plaintiff SMART-TD challenged the National Railroad Adjustment Board arbitration award in federal court, the district court upheld the arbitration award and the Sixth Circuit affirmed.[33]

II.   **Legal Standard**

---

15-15 (CSX Nov. 13, 2003 Letter); Doc. 15-16 (CSX Nov. 22, 2004 Letter); Doc. 15-17 (UTU Oct. 23, 2008 Letter); Doc. 15-18 (UTU Oct. 22, 2004 Letter); Doc. 15-19 (CSX Feb. 15, 2005 Letter); Doc. 15-20 (June 4, 2020 Email Exchange); Doc. 15-21 (May 6-May 10, 2021 Email Exchange); Doc. 15-24 (CSX Jan. 29, 1998 Letter).
[27] Doc. 15-9 (CSX July 17, 2003 Letter); Doc. 15-10 (CSX Aug. 12, 2002 Letter); Doc. 15-13 (CSX Aug. 25, 2003 Letter); Doc. 15-20 (June 4, 2020 Email Exchange).
[28] Doc. 15-22 (Labor Agreement 4-159-93).
[29] Doc. 15-29 (Prior Arbitration Decision) at 2; Doc. 15-27 (SMART-TD Arbitration Submission) at 6-7; Doc. 15-28 (CSX Arbitration Submission) at 2.
[30] Doc. 15-27 (SMART-TD Arbitration Submission); Doc. 15-28 (CSX Arbitration Submission).
[31] Doc. 15-29 (Prior Arbitration Decision) at 7.
[32] *Id.*
[33] *Int'l Ass'n of Sheet Metal, Air, Rail and Transportation Workers-Transportation Div. v. CSX Transportation, Inc.*, 1:16CV2554, 2018 WL 1251737, at *6 (N.D. Ohio Mar. 12, 2018), *affirmed*, 754 F. App'x 397, 398 (6th Cir. 2018) (unpublished).

Case No. 1:21-cv-01240
GWIN, J.

The Railway Labor Act sets out separate dispute resolution procedures for major and minor disputes. Major disputes "focus on acquisition of rights for the future," while minor disputes "involve interpretation or application of particular provisions of existing collective bargaining agreements."[34] In other words, minor disputes "arise from disagreements about how an existing collective-bargaining agreement applies to a particular situation."[35]

"The core distinction between these two types of disputes is that major disputes seek to create contractual rights, minor disputes to enforce them."[36]

For major disputes, parties must maintain the status quo until they exhaust the mandatory dispute resolution procedures.[37] Federal courts may enjoin parties who fail to maintain the status quo during dispute resolution.[38] Minor disputes must go to arbitration.[39] Federal courts do not have subject-matter jurisdiction over minor disputes except for limited arbitral decision review.[40]

When considering a motion for an injunction in a Railway Labor Act case, federal courts must first classify the dispute as major or minor.

Courts apply a strong presumption in favor of finding a minor dispute. When a party says that it has "discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement," courts must find a minor dispute and dismiss the case.[41]

---

[34] *Flight Options, LLC v. Int'l Bhd. of Teamsters, Loc. 1108*, 863 F.3d 529, 538-39 (6th Cir. 2017) ("*Flight Options I*") (quotation marks omitted).
[35] *Flight Options, LLC v. Int'l Bhd. of Teamsters, Loc. 1108*, 873 F.3d 540, 544 (6th Cir. 2017) ("*Flight Options II*").
[36] *Flight Options I*, 863 F.3d at 538 (quotation marks omitted).
[37] *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 302-03 (1989) ("Conrail").
[38] *Id.* at 303.
[39] *Id.* at 303-04.
[40] *Id.* at 304.
[41] *Id.* at 310.

- 8 -

Case No. 1:21-cv-01240
GWIN, J.

The Supreme Court has explained that this legal standard—finding a minor dispute where the collective bargaining agreement arguably justifies the party's position—places only a "light burden" on the party claiming the dispute is a minor dispute.[42]

"[S]o long as the party's proffered interpretation is not 'frivolous or obviously insubstantial,' the dispute is minor."[43]

### III. Discussion

Plaintiff SMART-TD and Defendant CSX have a minor dispute because the collective bargaining agreement arguably justifies Defendant CSX's June 2021 Policy. Defendant CSX gives an interpretation that is not frivolous or obviously insubstantial.

In addition, the parties' past practice supports the finding that Defendant CSX was interpreting the existing collective bargaining agreement, not creating new contractual rights.

The Court finds a minor dispute. This Court does not have jurisdiction over minor disputes under the Railway Labor Act.

#### A. Collective Bargaining Agreement

The collective bargaining agreement arguably justifies using displaced employees to fill temporary vacancies after CSX has exhausted the vacancy fill logic without filling the vacancy.

Three collective bargaining agreement rules control this dispute. Rule 27 (the "Calling Rule") sets procedures for filling temporary day-to-day trainman vacancies.[44] Rule 67 (the "Working List Rule") sets procedures for filling temporary day-to-day conductor vacancies.[45] Rule 64 (the "Displacement Rights Rule") governs displacement procedures

---

[42] *Id.* at 307.
[43] *Flight Options II*, 873 F.3d at 544 (quoting *Conrail*, 491 U.S. at 307).
[44] Doc. 15-1 (Collective Bargaining Agreement) at 34-36.
[45] *Id.* at 79-90.

- 9 -

Case No. 1:21-cv-01240
GWIN, J.

and displaced employees' rights.[46]

### a. Rule 27: The Calling Rule

The Calling Rule sets the terms for calling employees to report for duty. As relevant to this dispute, the Calling Rule sets the procedures for calling employees to fill temporary day-to-day vacancies on trainman assignments.

To fill a temporary vacancy, Defendant CSX must first turn to the appropriate extra board to fill the vacancy.[47] If Defendant CSX cannot fill the vacancies through the extra board list, Defendant CSX must follow the vacancy fill logic, a negotiated sequence for calling employees to fill an assignment.[48]

The Calling Rule sets the terms for filling "[t]emporary day-to-day vacancies in road service on must-fill trainmen assignments" and sets the terms for filling "[t]emporary day-to-day vacancies in yard service on must-fill trainmen assignments."[49] The Calling Rule also supplies sequences for filling yard vacancies of four hours for trainman and foreman vacancies.[50]

In each of these provisions, the Calling Rule does not include displaced employees as part of the vacancy fill logic sequence. The Rule also does not say what happens if a position remains vacant after the employer exhausts the sequence.

### b. Rule 67: The Working List Rule

While the Calling Rule sets the terms for filling temporary trainman vacancies, the Working List Rule sets the terms for filling temporary conductor vacancies.

---

[46] *Id.* at 73-78.
[47] *Id.* at 35-36.
[48] *Id.*
[49] *Id.*
[50] *Id.* at 36.

- 10 -

Case No. 1:21-cv-01240
GWIN, J.

Under this Rule, Defendant CSX must fill temporary conductor vacancies by first calling employees from the extra board list.[51] If the assignment remains vacant, Defendant CSX must follow the vacancy fill logic.[52]

The Working List Rule does not include displaced employees in the vacancy fill logic sequence and does not say what the employer should do after exhausting the sequence.

### c. Rule 64: The Displacement Rights Rule

While the Calling Rule and the Working List Rule set vacancy-filling procedures, the Displacement Rights Rule governs displaced employees' obligations and protections. The June 2021 Policy involves filling vacancies with displaced employees, making all three rules relevant to settling the current dispute.

The Displacement Rights Rule establishes the procedures for higher-seniority employees to displace lower-seniority employees.[53]

The Displacement Rights Rule also describes the terms for calling displaced employees to fill vacancies once those employees are displaced by higher-seniority employees.

Rule 64, Section 10 states: "A trainman who has displacement rights but has not placed himself will not be used to fill a vacancy *except in an emergency or when no other employee is available.*"[54]

Defendant CSX's June 2021 Policy quotes this Displacement Rule language and applies it to both trainmen and conductors.[55]

---

[51] *Id.* at 81.
[52] *Id.* at 81-82.
[53] *Id.* at 73-74.
[54] *Id.* at 75 (emphasis added).
[55] Doc. 15-3 (June 2021 Policy).

- 11 -

Case No. 1:21-cv-01240
GWIN, J.

### d. Analysis

The collective bargaining agreement arguably justifies Defendant CSX's June 2021 Policy.

Most importantly, the collective bargaining agreement does not say what should happen after the employer exhausts the agreed-upon vacancy fill logic. The June 2021 Policy fills that uncertainty and specifies that displaced workers "will be called only after all steps of the vacancy fill call logic have been exhausted and in reverse seniority order."[56] In effect, the June 2021 Policy says displaced workers need only respond when no other worker is available.

The Displacement Rights Rule arguably justifies the June 2021 Policy. The June 2021 Policy mirrors the Displacement Rights Rule language by stating that Defendant CSX will only call displaced employees for a vacancy "during cases of emergency or when no other employee is available."[57]

The June 2021 Policy does, however, differ from the Displacement Rule language in one way. Rule 64, Section 10 applies to displaced trainmen, while the June 2021 Policy applies to both displaced trainmen and displaced conductors.[58]

Faced with this ambiguity, the Court looks to the presumption in favor of finding a minor dispute. Even if Defendant CSX does not offer a superior collective bargaining agreement interpretation, the Court must find a minor dispute if Defendant CSX's argument

---

[56] *Id.*
[57] *Id.*
[58] Doc. 15-1 at 75 ("A trainman who has displacement rights but has not placed himself will not be used to fill a vacancy except in an emergency or when no other employee is available."); Doc. 15-3 (June 2021 Policy) ("Accordingly, trainmen and conductors in displaced status . . . will be subject to call and expected to answer a call for service to fill a vacancy during cases of emergency or when no other employee is available.").

Case No. 1:21-cv-01240
GWIN, J.

is not "frivolous or obviously insubstantial."[59] The collective bargaining agreement provides enough support for Defendant's position to meet that standard.

### B. Past Practice

The parties' past collective bargaining agreement practices support the Court's minor dispute finding.

When evaluating a Railway Labor Act claim, courts consider past practice to decide whether the collective bargaining agreement arguably justifies a party's interpretation.[60] The "relevant terms of an agreement are not only those that are written down; they also include the parties' practice, usage, and custom as they carry out their agreement."[61] Courts only analyze past practice, however, to decide whether the employer makes a non-frivolous argument.[62] Unlike arbitrators, courts do not use past practice to decide the exact scope of the employer's authority under the collective bargaining agreement.[63]

Here, the parties' previous displaced employee dispute supports Defendant CSX's argument that Defendant had authority to call displaced employees to fill vacancies. In deciding that earlier dispute, the National Railroad Adjustment Board found that Defendant CSX can discipline displaced employees who do not immediately bid on new assignments.[64] A federal district court upheld this arbitration award and the Sixth Circuit affirmed.[65]

---

[59] *Flight Options II*, 873 F.3d at 544 (quoting *Conrail*, 491 U.S. at 307).
[60] *See Flight Options I*, 863 F.3d at 542 ("A claim is 'arguably justified' if any reasonable labor arbitrator, applying appropriate principles of contract interpretation and after reviewing relevant extrinsic evidence (such as evidence of past practice), could find that the contract *does justify* a party's claimed right to take, or to refrain from taking, an action.").
[61] *Bhd. of Locomotive Engineers and Trainmen (Gen. Comm. of Adjustment, C. Region) v. Union P. R.R. Co.*, 879 F.3d 754, 758 (7th Cir. 2017).
[62] *Id.*
[63] *Id.* at 759 ("Wading through the competing declarations to determine the actual authority the Railroad had to modify the disciplinary policies, based on past practices, is a job for the arbitrator.").
[64] Doc. 15-29 (Prior Arbitration Decision) at 7.
[65] *Int'l Assn. of Sheet Metal, Air, Rail and Transportation Workers*, 754 F. App'x at 405-06.

Case No. 1:21-cv-01240
GWIN, J.

Also, some evidence shows that CSX has called displaced employees for vacancies at least as far back as April 2020.[66] While the June 2021 Policy formalized the practice, it did not significantly change previous practice.

Plaintiff SMART-TD argues that past practice shows that the union and Defendant CSX negotiated over the vacancy fill logic. These earlier negotiations, however, do not show a major dispute here. While the parties interpret the collective bargaining agreement differently, the legal standard limits this Court's review to considering whether the collective bargaining agreement arguably justifies Defendant CSX's position. The evidence of earlier negotiations does not change the Court's conclusion.

## IV. Conclusion

For the above reasons, the Court finds that the parties have a minor dispute. The Court therefore **DISMISSES** this case for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

Dated: February 21, 2022             *s/      James S. Gwin*
                                     JAMES S. GWIN
                                     UNITED STATES DISTRICT JUDGE

---

[66] Doc. 15-30 (Displaced Employee Call List).

- 14 -